FILED
United States Court of Appeals
Tenth Circuit

May 1, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MABLENE JONES,

        Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

        Defendant - Appellee.

No. 14-5115
(D.C. No. 4:13-CV-00414-GKF-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

Mablene Jones appeals from an order of the district court affirming the

Commissioner's decision denying her applications for Social Security disability,

disabled widow's benefits, and Supplemental Security Income (SSI) benefits.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ms. Jones filed for these benefits effective May 17 and 20, 2010. The agency denied her applications initially and on reconsideration.

On December 5, 2011, Ms. Jones received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that she suffered from the serious impairments of degenerative joint disease of the knees and depression. The ALJ further concluded that her impairments did not meet or equal a listed impairment. She determined that Ms. Jones retained the residual functional capacity (RFC) to perform light work with the following restrictions: she would be unable to operate foot controls and would be "limited to simple, routine, repetitive tasks. She is able to have superficial and incidental work-related interaction with co-workers and supervisors, but would not be effective in a team environment. The claimant should be in a job that does not require significant public interaction to complete job duties." Aplt. App., Vol. 2 at 26.

Based on this RFC determination, the ALJ found that Ms. Jones could not return to any of her past relevant work, but that there were a significant number of other jobs that she could perform in the national economy. Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.14 (the grids) as a framework, and considering the testimony of a vocational expert (VE), the ALJ concluded that she would be able to perform the requirements of the light jobs of

hand sorter, hand packager, or office helper; and the sedentary jobs of assembler or clerical mailer. She was therefore not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

On appeal, Ms. Jones raises a single issue: whether the ALJ properly considered the treating medical source opinion evidence she presented in support of her claim. Although she purports to challenge the ALJ's treatment of "all of the treating medical source opinion evidence," Aplt. Br. at 21, she has only developed an appellate argument that the ALJ failed to give appropriate consideration to the opinions of Dennis Koldkolo, M.D.[1]

---

[1] The ALJ referred to this physician as "Dr. Koldkolo," whereas Ms. Jones refers to him as "Dr. Kolokolo." As we read his hand-printed name, which appears in capital letters on the forms he completed, the correct spelling of his surname is "Koldkolo." *See* Aplt. App., Vol. 3 at 379-82.

The ALJ "assume[d]" that Dr. Koldkolo was Ms. Jones's treating physician at Tulsa Dream Center Health Services (Dream Center), where she received treatment. Aplt. App., Vol. 2 at 30. The only medical records expressly associated with Dr. Koldkolo are forms that he completed and signed on November 9, 2011. *See id.*, Vol. 3 at 379-82. But several Dream Center records also appear to bear his signature. *See id.* at 310, 370, 375. Like the ALJ, we will assume that Dr. Koldkolo was Ms. Jones's treating physician.

Dr. Koldkolo expressed his opinions in the form of four "checked box" questionnaire forms, which included his: (1) "Medical Opinion Re: Clinical Assessment of Pain," *id.* at 379; (2) "Medical Opinion Re: Sedentary Work Requirements," *id.* at 380; (3) "Medical Opinion Re: Basic Unskilled Work Requirements," *id.* at 381; and (4) "Medical Opinion Re: Absences From Work," *id.* at 382. Ms. Jones specifically challenges the ALJ's rejection of Dr. Koldkolo's opinions concerning her ability to stand and walk, which are primarily contained on the "Sedentary Work Requirements" form. On that form, Dr. Koldkolo answered the question, "Can your patient stand and/or walk for up to two (2) hours in an 8-hour workday?" by checking both "Yes" and "No" answers, but he scratched out the "Yes" answer and marked the obliteration with his initials. *Id.* at 380.

Although the "Sedentary Work Requirements" form requests "objective medical findings that support your opinion," *id.*, none were provided. On the "Clinical Assessment of Pain" form, the "underlying medical condition" causing pain

- 4 -

was identified as "[right] knee swelling, pain, immobility" and "DJD: degenerative joint disease." *Id.* at 379. On the "Basic Unskilled Work Requirements" form, the contributing impairments and/or symptoms were identified as "DJD" and "Depression." *Id.* at 381. And on the "Absences From Work" form, the contributing impairments and/or symptoms were listed as "pain, depression, and [hypertension]." *Id.* at 382. Other than a handwritten notation that Ms. Jones could "not [medically sustain normal work stress] for 8 hours," *id.* at 380, these are the only narrative indications on the forms; the remainder of the opinions were expressed through checkmarks in boxes.

> The ALJ determined that the limitations on these forms

>> are . . . not well supported by or fully consistent with the Dream Center treatment notes. Although there are complaints of pain, the objective findings have shown no effusion and normal range of motion of the knee. There are x-rays in the record, which indicate the presence of degenerative joint disease. However, the above findings on physical examination do not fully support the allegations of pain, and Dr. Koldkolo's indication that such pain would cause inadequate functioning in or abandonment of basic physical work activities. I note Dr. Koldkolo's statements regarding [Ms. Jones's] inability to maintain attention and concentration for extended periods and [her] inability to handle normal work stress. After careful consideration of the record, I find [Ms. Jones] is limited to simple, routine, repetitive tasks; further limitation is not supported in the record. There is an absence of mental health treatment in the record. I accord Dr. Koldkolo's opinions little weight.

*Id.*, Vol. 2 at 30 (citation omitted).

"A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). If an opinion is not entitled to controlling weight, the ALJ must still determine what weight, if any, to assign to the opinion by considering the factors set forth at 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1176-77. The ALJ must give good reasons for the weight she assigns to the opinion, and specific, legitimate reasons if she rejects the opinion completely. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Although she need not explicitly discuss each factor, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the reasons stated must be "sufficiently specific" to permit meaningful appellate review, *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted).

Ms. Jones argues that the ALJ could reject Dr. Koldkolo's opinions only by citing contrary medical evidence. She contends that "[t]he alleged lack of evidence on a physical exam is not evidence." Aplt. Br. at 23. Ms. Jones relies on *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). In that case, we stated that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (emphasis and internal quotation marks omitted). Here, there is no indication that the ALJ relied on her own "credibility judgments, speculation, or lay opinion" in evaluating Dr. Koldkolo's opinions. Moreover, in *McGoffin*, we further explained that "an ALJ's credibility judgments . . . by themselves do not carry the

day and override the medical opinion of a treating physician *that is supported by the record.*" *Id.* (emphasis added) (internal quotation marks omitted).

The lack of affirmative support in the medical record is a legitimate consideration at both steps of treating physician analysis. *See id.* (noting that treating physician's *well-supported* opinion is entitled to controlling weight); Soc. Sec. Ruling 96-2P, 1996 WL 374188, at *2 (July 2, 1996) ("The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion."); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (identifying degree to which physician's opinion is supported by relevant evidence as a factor to be considered in assigning weight to the opinion). In light of these considerations, the ALJ properly considered the lack of medical evidence, in particular the findings of lack of effusion and normal range of motion of the knee, in assigning little weight to Dr. Koldkolo's opinions.[2]

Ms. Jones also contends that the x-rays support, rather than undermine, Dr. Koldkolo's opinions, because they revealed "a moderate amount of narrowing about the medical sides of both knee joints as well as some narrowing about the patellofemoral spaces bilaterally." Aplt. Br. at 25 (quoting Aplt. App., Vol. 3 at 327). She claims these findings "support . . . Dr. [Koldkolo's] allegations of pain and difficulty standing/walking." *Id.* But the question is not whether Ms. Jones has

---

[2] A normal range of motion might actually be considered *affirmative* evidence contradicting Dr. Koldkolo's restrictions on walking or standing rather than a *lack* of evidence, but even considered as a lack of evidence, the ALJ properly relied on it.

pain or difficulty in standing and walking; it is whether the ALJ provided adequate reasons for rejecting Dr. Koldkolo's check-in-the-box opinions that she could not stand and walk for two hours in an eight-hour workday and that her pain would be so severe as to cause inadequate functioning in basic physical work activities.[3] Ms. Jones fails to show that the moderate narrowing revealed on the x-rays, which the ALJ specifically mentioned but discounted, compelled her to accept Dr. Koldkolo's restrictions in the face of medical evidence that showed lack of effusion and a full range of motion.

Finally, Ms. Jones argues that even if the ALJ's finding that Dr. Koldkolo's opinions were not well supported justified her decision not to give the opinions controlling weight, it did not justify her further decision to assign them little weight. Certainly, an ALJ must complete both steps of the analysis in analyzing a treating physician's opinion. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004) ("[E]ven if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using all of the relevant factors."

---

[3]    In her reply brief, Ms. Jones asserts that "[t]he ALJ's 'reasons' address [only her] pain level and attention and concentration, not her ability to walk and stand." Reply Br. at 7. But the ALJ specifically mentioned all four of Dr. Koldkolo's opinions before rejecting his "indication that such pain would cause inadequate functioning in or abandonment of basic physical work activities." Aplt. App., Vol. 2 at 30. "Basic work activities" were defined in the "Clinical Assessment of Pain" form to include "*walking, standing*, sitting, lifting, pushing, pulling, bending or stooping, reaching, carrying, handling, etc.," *id.* Vol. 3 at 379 (emphasis added). Also, the ALJ's discussion of knee problems, even if phrased in terms of associated pain, implicitly addressed Dr. Koldkolo's assessment of Ms. Jones's ability to stand and walk due to those problems.

(brackets and internal quotation marks omitted)). But the ALJ did so here. As noted, she cited the lack of supporting evidence for the opinion, a legitimate factor in determining the weight to be given a treating physician's opinion. In addition, the ALJ noted that "it is unclear from the record [Dr. Koldkolo's] specialty, or the length and frequency of his treatment of [Ms. Jones]." Aplt. App., Vol. 2 at 30. These also were legitimate factors to be considered under the applicable regulations. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), (5), 416.927(c)(2)(i), (5) (identifying length of treatment relationship and frequency of examination and physician's specialty as factors to be considered in assigning weight to medical opinions).

In sum, the ALJ provided adequate reasons for assigning little weight to Dr. Koldkolo's opinions concerning Ms. Jones's ability to stand and walk. *See Oldham*, 509 F.3d at 1258 ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case." (citation omitted)).

The judgment of the district court is therefore affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge

- 9 -